John PINO et al., Plaintiffs, Appellees,

v.

PROTECTION MARITIME INSURANCE COMPANY, LTD., et al., Defendants, Appellants.

No. 78–1418.

United States Court of Appeals, First Circuit.

Argued Jan. 4, 1979.

Decided May 30, 1979.

Carroll E. Ayers, Wakefield, Mass., with whom Bernard Michael Ortwein, III, and John E. Sutherland, Wakefield, Mass., were on briefs, for defendants, appellants.

Morris D. Katz, Boston, Mass., with whom Ronald B. Horvitz, Boston, Mass., was on brief, for plaintiffs, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This admiralty case involves allegations that the defendant maritime insurance companies,[1] owned and operated by Ernest Enos, were "blacklisting" plaintiff-appellees (a group of seamen working, at one time or another, out of Gloucester, Massachusetts) by demanding higher insurance premiums from the owners of vessels on which they worked. The plaintiffs claimed, *inter alia,* that the higher premiums were unjustified and that the defendants had tortiously interfered with their employment rights.[2] Their suit was alleged to be within the admiralty jurisdiction of the federal courts, and both injunctive relief and damages were sought.

The case was tried to a judge sitting in admiralty in the district of Massachusetts. The court found that defendants insured 70% to 75% of the Gloucester fishing fleet at regular annual premiums of, in 1971,

---

[1] The named defendants also included the vessel owners, but they were not the real parties in interest and no judgment against them was entered.

[2] The plaintiffs made other statutory claims (e. g., allegations of antitrust violations) that were without merit and are not pressed on appeal.

$650 to $800 per crewman. These rates were comparable to those of defendants' competitors. The court also found, however, that defendants required the owners of vessels to send them a "settlement sheet" containing the name and address of every member of the crew after all fishing trips completed by vessels they insured. These sheets were reviewed by Enos in part to learn whether any seamen who allegedly created a "special risk of loss" had been aboard. When such seamen were identified, the vessels owners were told that they would have to pay higher premiums—sometimes as much as an additional $6,500—to cover these men. As a result, the named seamen encountered great difficulty finding employment. The court also found that the practice of requiring settlement sheets began after defendants, as a result of prior litigation, were enjoined from using an exclusionary endorsement system, under which specific seamen were excluded from coverage under insurance policies.[3] It held that eight of the fourteen plaintiffs had been designated high-risk seamen under the added premium system not for legitimate risk-related reasons, but because they had filed personal injury claims against the defendant insurance companies and had prosecuted their claims to judgment, instead of settling them to Enos' satisfaction.

The court adopted the Restatement (First) of Torts § 766 (1939), as a rule of decision. It found that defendants' economic pressure exerted on the boat owners was "a purposeful inducement and cause . . . to disrupt or abort the relationships of employment at will existing between the fishermen and the boat owners," and held that, "defendants' intentional tortious interference with plaintiffs' employment relationships was not privileged." See Restatement (First) of Torts §§ 767, 769 (1939).

3. That system, which also interfered with the named seamen's ability to find employment, had been found to have been adopted with malice and to be beyond the scope of defendants' legitimate business privilege. See Pino v. Trans-Atlantic Marine, Inc., 358 Mass. 498, 265

The court awarded interim injunctive relief pending a hearing on the issue of damages. That injunction enjoined defendants from:

"1. charging any additional premium to the owner of any commercial fishing vessel because he has signed on as a crewmember any one or more of [the eight prevailing plaintiffs]; and

2. demanding as a condition for the issuance, maintenance, or continuation of any insurance policy that the owner of the fishing vessels make available to any of the three defendants . . . a settlement sheet which contains the names of any crewmember."

It is from this judgment and temporary injunction that defendants appeal. See 28 U.S.C. § 1292(a)(1).

Defendants challenge the admiralty jurisdiction of the court and argue that, even if the court did have jurisdiction, it was not empowered to grant injunctive relief. Alternatively, they argue that the injunction exceeds the scope of the court's authority—that it is punitive, overbroad, harsh and disproportionate to the tortious conduct on which it is based. In respect to the finding of liability, they argue that the court erred in finding that their acts were not privileged business conduct and in relying on certain evidence.

JURISDICTION

Defendants argue that plaintiffs' tort claims are not within the admiralty jurisdiction of the federal courts, see U.S. Const. art. III, § 2; 28 U.S.C. § 1333, and ask us to overrule our decision to the contrary in *Carroll v. Protection Maritime Insurance Co.*, 512 F.2d 4 (1st Cir. 1975). In *Carroll* we directly confronted the question presented here: whether admiralty jurisdiction extends to allegations by seamen that an insurance company—coincidentally the same company involved here—has tortious-

N.E.2d 583, 586–87 (1970); *Protection Maritime Insurance Co. v. Foley*, No. 70–1116–G (D.Mass. Nov. 16, 1971); *Foley v. Trans-Atlantic Marine, Inc.*, No. 18328 (Essex Super.Ct. June 18, 1970).

ly interfered with their maritime employment rights. We held that it does. *Id.* at 5–9; *see Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 259–60, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Defendants cite no conflicting legal authority that has emerged since then. Nor do they present any arguments not there considered.[4] We decline to depart from a position taken only four years ago. *See Gavin v. Chernoff,* 546 F.2d 457, 458–59 (1st Cir. 1976).

## LIABILITY

Defendants challenge the finding of liability on two grounds: one, that the court admitted and considered evidence that should have been excluded, and two, that it misapplied the governing substantive legal principles.

■ *Admission of Evidence:* Defendants object to the admission of hearsay statements of a deceased, Eugene Marshall. The court apparently viewed one of these as a "statement of fact by the decedent . . made in good faith before the case" under Mass.Gen.L. c. 233, § 65. Defendants correctly point out that the Federal Rules of Evidence should have been the governing standard. *See* Fed.R.Evid. 101.[5]

One of the challenged statements was to the effect that Marshall, an insurance broker working at least in part for Enos, told plaintiff Powers that he could not pay Powers' hospital and doctors bills incurred after Powers sustained a hernia after a fire. There was also Marshall's purported statement, when discharging Powers as skipper of a vessel Marshall owned, that he was doing so because Powers was on the "boat 'blacklist.' "[6]

Plaintiffs argue that, if the Massachusetts rule was not applicable, these nevertheless were statements against interest and therefore were admissible under Fed.R. Evid. 804(b)(3), in that they were:

"at the time of [their] making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability . . . that a reasonable man in his position would not have made the statement[s] unless he believed [them] to be true."

■ We think Rule 804 inapplicable to the first statement. It in no way implicated Marshall as a possible tortfeasor. Nor did it threaten Marshall's business relationship with Enos. In stating that he could not pay Powers' medical expenses, however, Marshall was speaking in his capacity as a broker for Enos. This was therefore an admission by a party opponent and admissible under Fed.R.Evid. 801(d)(2)(D). The second statement, referring to the blacklist, was admissible as a statement against interest under Fed.R.Evid. 804. It tipped Enos' and Marshall's hand by acknowledging that a blacklist existed and that Marshall's action was taken because Powers' name was on it.

■ Defendants also object to the admission of allegedly hearsay statements attributed by plaintiffs to various boat owners and captains, not all of whom were named defendants. One instance cited is Powers' testimony that he was turned down for jobs on twenty boats because the owners would have had to pay an additional $1,000 in insurance premiums to cover him. Enos himself testified, however, that he required an additional $1,500 to cover Powers, and various boat owners testified that the added premium deterred them from hiring Powers. Assuming, without deciding, that the testimony was inadmissible, no prejudice

4. Defendants' suggestion that we did not consider the effects of the Admiralty Extension Act, 46 U.S.C. § 740, in *Carroll* is unpersuasive, as that Act, although not mentioned in our decision, was discussed in the cases we cited.

5. Incredibly, although this case was tried in 1977, plaintiffs defend the ruling by relying on the pre-1972 version of Fed.R.Civ.P. 43, which

referenced to the law of the state in which the federal court was sitting. Plaintiffs' counsel appears unaware that the rule was changed.

6. In between the times when these statements allegedly were made by Marshall, Powers sought legal assistance in pressing his insurance claim.

could have resulted. The same is true as to similar hearsay testimony by plaintiff Vaiarella—similar corroborating evidence was introduced as to the premium charged and its effect on the boat owners. That some of Powers' and Vaiarella's testimony was "layered hearsay"—statements as to what various boat owners and captains told plaintiffs they had been told by the insurers—leads to no different result.

Defendants' remaining objections are not set forth with enough specificity to warrant detailed consideration. Our review of the record reveals no likelihood of prejudice from any of the allegedly erroneous evidentiary rulings. Nor have defendants met their burden of showing that the district court's findings of fact, including its findings on the credibility of the witnesses, were clearly erroneous. Fed.R.Civ.P. 52(a).

■ *Application of Substantive Law*: The district court adopted the Restatement (First) of Torts § 766 (1939) as "a recognized national standard from which to fashion a controlling principle of substantive federal maritime law." That section provides in pertinent part:

"[O]ne who, without a privilege to do so, induces or otherwise purposely causes a third person not to

(a) perform a contract with another, or

(b) enter into or continue a business relationship with another

is liable to the other for the harm caused thereby."

This standard has been applied in similar cases by the Massachusetts state courts. *E. g., Pino v. Trans-Atlantic Marine, Inc.*, 358 Mass. 498, 265 N.E.2d 583, 587 (1970). We find no error.

■ Defendants argue that because plaintiffs did not work under long-term employment contracts, any refusal to hire was not a breach of contract within § 766(a), but rather fell within § 766(b). *See* Restatement (First) of Torts § 766, Comment c. A finding of a violation of § 766(b) requires that the alleged tortfeasor have acted with the purpose of deterring one from dealing with another, Restatement (First) of Torts

§ 766, Comment d, and here, defendants assert, their only purpose was the legitimate one of covering their insurance risks. The court, however, found that this was not so—that,

"eight of the fourteen plaintiffs were designated as added-premium seamen not for legitimate risk-related reasons but because of their inability to amicably settle insurance claims to Enos' satisfaction, and because of their retention of counsel, filing of personal injury actions, and prosecution of those claims to judgment, as they had every right to do."

The court further found that defendants knew that the exorbitant added premiums would cause ship owners to discharge plaintiffs and would discourage plaintiffs from seeking legal representation and making work-related injury insurance claims. These findings, which are not clearly erroneous, sustain the finding of purposeful conduct. *See* Restatement (First) of Torts § 766, Comment d; W. Prosser, Law of Torts § 8, at 31–32 (4th ed. 1971).

■ By the same token, the court did not err in finding that defendants had exceeded the limits of legitimate business privilege. *See* Restatement (First) of Torts §§ 767, 769, 771. The burden of proving otherwise was on defendants. *Carroll, supra*, 512 F.2d at 6, and they did not do so. There is no privilege to deter people from exercising their legal rights by penalizing those who do. The sections defining business privileges all contain provisions indicating that defendants' conduct, as found by the court, would not be within their scope: there are no "social interests" in protecting defendants' conduct, § 767(e), and §§ 769 and 771 do not apply if the actor employs improper means, §§ 769(a), 771(c).

## AUTHORITY TO GRANT INJUNCTIVE RELIEF

The major question raised on appeal is whether a court sitting in admiralty has the authority to award injunctive relief. Defendants argue that it cannot, pointing out, correctly, that admiralty courts historically have been thought not to have that power.

*See* G. Gilmore and C. Black, Law of Admiralty 40–43 (2d ed. 1975) [hereinafter Law of Admiralty]; H. Zobel, "Admiralty Jurisdiction, Unification, and the American Law Institute," 6 San Diego L. Rev. 375 (1969). This doctrine was anchored in the traditional common law distinction between law, admiralty and equity, and was voiced by the Supreme Court in *Schoenamsgruber v. Hamburg American Line,* 294 U.S. 454, 457–58, 55 S.Ct. 475, 79 L.Ed. 989 (1935) (dicta). But the Court, while it has assumed, has in few, if any, cases held that injunctive relief is not available, *see* Law of Admiralty 43, and its later decisions have taken a somewhat different tack. In *Swift & Co. Packers v. Compania Colombiana Del Caribe, S. A.,* 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950), the Court held that an admiralty court disposing of a claim against a shipper for lost goods had jurisdiction to determine whether the shipper had fraudulently conveyed a ship to a dummy corporation to avoid its attachment by the court. Justice Frankfurter, writing for the Court, observed that to deny an admiralty court jurisdiction over such a subsidiary equitable issue would strangely "hobble" the legal system, and said, "We find no restriction upon admiralty by chancery so unrelenting as to bar the grant of any equitable relief even when that relief is subsidiary to issues wholly within admiralty jurisdiction." *Id.* at 691-92, 70 S.Ct. at 866. And eleven years later, in *Vaughan v. Atkinson,* 369 U.S. 527, 530, 82 S.Ct. 997, 999, 8 L.Ed.2d 88 (1962), the Court said, in discussing an award of counsel's fees, that, "Equity is no stranger in admiralty; admiralty courts are, indeed, authorized to grant equitable relief."

Four years after *Vaughan,* in 1966, Congress extended the Federal Rules of Civil Procedure to admiralty cases. *See* Fed.R. Civ.P. 1. Some commentators took this as a further sign that admiralty could award whatever relief was appropriate in a given case. The idea that admiralty could not grant injunctive relief was, they said, archaic jetsam; anchored in no more solid ground than history, it was best not left to be a "derelict on the waters of the law," *Lambert v. California,* 355 U.S. 225, 232, 78 S.Ct. 240, 245, 2 L.Ed.2d 228 (1957) (Frankfurter, J., dissenting). *See* Law of Admiralty 43; *cf. Zobel, supra,* at 382–85.

The question whether injunctive relief could be awarded was first addressed directly after 1966 by the Fifth Circuit. In *Lewis v. S. S. Baune,* 534 F.2d 1115 (5th Cir. 1976), it adopted the words of its Chief Judge in an earlier case and held that district courts sitting in admiralty may grant injunctive relief under Fed.R.Civ.P. 65:

> "The Chancellor is no longer fixed to the woolsack. He may stride the quarterdeck of maritime jurisprudence and, in the role of admiralty judge, dispense, as would his landlocked brother, that which equity and good conscience impels."

534 F.2d at 1121, *quoting Compania Anonima Venezolana De Navegacion v. A. J. Perez Export Co.,* 303 F.2d 692, 699 (5th Cir.), *cert. denied,* 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276 (1962). *Accord, McKie Lighter Co. v. City of Boston,* 335 F.Supp. 663, 666–67 (D.Mass.1971); *see Guillot v. Cenac Towing Co.,* 366 F.2d 898, 904 (5th Cir. 1966).

Defendants distinguish *Lewis* as a case in which injunctive relief was awarded on a claim ancillary to the maritime claim that formed the basis of jurisdiction. This is an accurate characterization of the case on its facts,[7] but the Fifth Circuit's discussion of the issue did not distinguish between injunctive relief for admiralty claims and such relief for claims heard in admiralty by virtue of the court's ancillary jurisdiction. Rather it suggested a rule of general applicability, noting the 1966 unification of procedure and the doctrinal development we have outlined above.

---

7. *Lewis* was an appeal from a permanent injunction and a conviction of contempt for violating a district court's temporary restraining order. The t. r. o. had been directed at preventing a shipping company's attorneys from contacting the plaintiffs directly, rather than through their attorneys (who were on contingency), in an effort to settle litigation arising out of a fatal ship collision. Although the court held that admiralty courts could award injunctive relief, it found that the district court's orders were improper. 534 F.2d at 1121–24.

This circuit has discussed injunctive relief in admiralty in the past, but has not, until now, been faced directly with the question. In *Carroll, supra*, 512 F.2d at 9, we assumed that equitable relief was not available from admiralty courts. In 1976, however, in *A & R Marine Salvage v. McAllister Lighterage Line*, 544 F.2d 551, 553, we questioned whether this was "the present law," noting that the rule had been subject to great criticism and that the Supreme Court had suggested its demise.

█ We hold, with the question now before us, that courts sitting in admiralty may award injunctive relief in accordance with Fed.R.Civ.P. 65 in situations where such relief would be appropriate on land. This is a departure from the traditional rule, but we find no constitutional, statutory or policy reasons of substance for recognizing a continued limitation upon the power of federal courts sitting in admiralty, nor does it seem likely that the Supreme Court would today adhere to the traditional rule. *See Swift & Co., supra*, 339 U.S. at 692, 70 S.Ct. 861. District courts sitting in admiralty, which now operate under virtually the same procedures as they do otherwise, should be able to provide the kind or degree of remedy that will properly and fully redress an injury within their jurisdiction, in keeping with the same principles they would apply in other comparable cases. *See Swift & Co., supra*, 339 U.S. at 691, 70 S.Ct. 861; Law of Admiralty 43. This is not to say, of course, that the rules and constraints affecting equitable jurisdiction on land will be ignored in admiralty—but merely that where equitable relief is otherwise proper under usual principles, it will not be denied on the ground that the court is sitting in admiralty.

## SCOPE OF INJUNCTIVE RELIEF

█ Apart from the fact that the court was sitting in admiralty, defendants do not challenge its right to issue an injunction here. Rather their remaining complaint is of the scope of the injunction. Thus we assume, without deciding, that the district court properly found the equitable criteria necessary for an injunction. We address only whether the injunction was properly tailored "to remedy the specific harm shown," *Aviation Consumer Action Project v. Washburn*, 175 U.S.App.D.C. 273, 282–283, 535 F.2d 101, 108–09 (1976). We bear in mind that the award of injunctive relief, being committed to the discretion of the district court, is reviewable only for abuse. *Essex County Preservation Association v. Campbell*, 536 F.2d 956, 962 (1st Cir. 1976).

Defendants' primary objection is that the injunction prohibits them from raising the premiums for any of the eight prevailing plaintiffs for any reason. They argue that this interferes with their lawful business activity, and that the injunction should merely prohibit the imposition of an unjustified additional premium. Defendants also object to the prohibition against their requiring settlement sheets for vessels they insure. They argue that this aspect of the injunction interferes with their collection of information regularly and properly used in assessing premiums, and that it prevents them from obtaining information as to all seamen, not merely the eight prevailing plaintiffs.

█ We note, initially, that the injunction entered is a temporary one, effective pending disposition on the issue of damages and subject at all times to modification, if the district court is persuaded of a change in circumstances. The court found that none of Enos' legitimate underwriting criteria justified Enos' additional premium as to the eight prevailing plaintiffs at the time of its decision. Given these facts, the court did not abuse its discretion in ordering defendants not to raise plaintiffs' premiums. An insurance company is entitled, of course, to raise its premiums where legitimate considerations dictate. But the testimony elicited from Enos revealed that, in setting premiums, he relied on few, if any, objective criteria or statistical guidelines. The court found that Enos, whom it described as "evasive," set premiums largely on a subjec-

tive, ad hoc basis.[8] Given the difficulty the court would have faced in policing an order allowing Enos to set only "legitimate" additional premiums in the face of his elusive rate-setting practices, and the indication that the higher premiums were being misused to deter seamen from exercising their rights, it was within its discretion to temporarily enjoin Enos from charging any additional premiums as to the eight plaintiffs.

We are less confident that the injunction against requiring settlement sheets from insured boat owners is appropriate. The interests of the prevailing plaintiffs would seem to have been fully protected by the injunction against raising their premiums; as this was not a class action, it is not clear that the injunction as to the settlement sheets was required. The court did find that the practice of requiring settlement sheets was adopted after the exclusionary endorsement system was enjoined by the federal district court in *Protection Maritime Insurance Co. v. Foley*, No. 70–1116–G (D.Mass.1971), and that the list was used,

"with an eye toward learning the earnings of the crew, the whereabouts of the crew and vessel, and, *most notably, the presence of any crew members who created, in [Enos'] sole judgment,* a special risk of loss."

(Emphasis added.) The court also found that these sheets were obtained after voyages were completed, that defendants "had no way of knowing who might be a crew member on an insured vessel prior to any given trip," and that defendants knew the consequences of their practices for plaintiffs' employment prospects. It did not state, however, that the collection of the information on the settlement sheets had no legitimate function, or that requiring the settlement sheets was largely a way of pressuring boat owners into not hiring

"blacklisted" fishermen. Given these facts and, in addition, the finding that Enos had some legitimate basis for requiring additional premiums for those plaintiffs whose claims were dismissed, we conclude that this aspect of the injunction is too broad. As the court may not have articulated fully its reasons for adopting this aspect of its order, however, we remand with instructions to vacate unless the court, after making suitable findings of fact, concludes that this aspect of the order is necessary to protect the rights of the eight prevailing plaintiffs.

The judgment of liability is affirmed, as is the order temporarily enjoining defendants from assessing higher premiums as to the prevailing plaintiffs. The order enjoining the use of settlement sheets is remanded for reconsideration in light of this opinion.

*So ordered.*

---

8. The district court found:

"[Enos] conceded that he has never consulted with any outside person, expert or otherwise, on loss experience, premium-setting, or any other technical aspect of the insurance business. He further conceded that, in fact, the amount of the added premium boils down to a subjective judgment on his part, which he claims makes the premium commensurate with the risk assumed by the insurance company in 'allowing' that man to be a member of an insured crew. Counsel stipulated that the rate of premium is free of any state or federal regulation. . . . After considerable evasion, Enos also admitted that 24 or 25 fishermen, out of a total insured work force of at least 200 men, were subject to an added premium."