UNITED STATES of America,
Plaintiff, Appellant,

v.

The M/V ZOE COLOCOTRONI, etc., et
al., Defendants, Appellees.

No. 78–1542.

United States Court of Appeals,
First Circuit.

Argued May 9, 1979.

Decided June 29, 1979.

See also, D.C., 456 F.Supp. 1327.

Allen P. van Emmerik, Atty., U. S. Dept. of Justice, Washington, D. C., with whom Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Julio Morales Sanchez, U. S. Atty., San Juan, P. R., and Michael Kimmel, Atty., U. S. Dept. of Justice, Washington, D. C., were on brief, for appellant.

Owen McGivern, New York City, with whom John W. Wall, Peter S. Dealy, Gary B. Schmidt, Richard A. Booth, Donovan, Leisure, Newton & Irvine, Daniel J. Dougherty, Mary Louise Montgomery, and Kirlin, Campbell & Keating, New York City, were on brief, for appellees.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, WYZANSKI, Senior District Judge.*

COFFIN, Chief Judge.

This suit arises from an action brought by the United States to recover its costs of cleaning up an oil spill. The spill occurred when the defendants' oil tanker, the SS ZOE COLOCOTRONI ran aground about three miles off the southern coast of Puerto Rico and jettisoned more than 5000 tons of crude oil into the Caribbean in an attempt to refloat. The defendants moved for summary judgment in favor of · the United States in the full· amount of the government's claimed cleanup costs, $677,660.42, which judgment was granted. That left only three contested issues, the government's claims for interest, statutory penalties and attorney's fees. The court imposed full statutory penalties upon the defendants, awarded prejudgment interest at the

rate of six per cent from the date the United States first notified defendants of the amount which was due, and denied the United States' requests for attorney's fees. The United States appeals from that judgment on two grounds. First, it argues that the prejudgment interest should have run from an earlier date, namely, when the United States first incurred its expenses and that it should have been computed at a higher rate. Second, it maintains that the court erred in denying its claims for fees. Not finding sufficient merit in either contention, we affirm the judgment below.

Little would be served by a detailed recitation of the events which transpired during the four and a half years that passed between the oil spill and the entry of judgment. In the context of the narrow legal issues raised by this appeal, we need not resolve the conflicting explanations the parties offer for that delay. The United States accuses the defendants of bad faith, "stonewalling", and "contumacious obstinacy"; the defendants attempt to shift responsibility for the delay to the United States. Suffice it to say that the court's findings show that the United States experienced considerable frustration in its attempts to secure the cooperation of the vessel owners and their insurers in the cleanup process.

### 1. Prejudgment Interest

Recognizing that the general rule in collision cases in admiralty is that interest is awarded from the date of the actual casualty or loss, see, e.g., Moore-McCormack Lines v. Amirault, 202 F.2d 893, 898 (1st Cir. 1953); Robinson on Admiralty § 114 at 850–51 & n.159 (1939), the court nonetheless concluded that "[t]he instant action cannot be blindly encased in the confines of a typical admiralty claim", and that "[p]rior to the date when the Government first sent a bill, the claims were unliquidated and unascertained." "Considering all the equities involved", the court found that the United States would be adequately compensated by an award of prejudgment

* Of the District of Massachusetts, sitting by designation.

interest running from November 12, 1974, the date when a bill was first sent to defendants. The United States vigorously disputes the court's power to depart from the strict admiralty rule in collision cases which, it claims, entitled it to interest from July 19, 1973, the date it incurred expenses in the cleanup.

Quite simply, we do not believe that this is the type of case in which the collision rule of prejudgment interest need apply. Unlike the numerous authorities cited to us by the United States, *see, e.g., Socony Mobil Oil Co. v. Texas Coastal and International, Inc.,* 559 F.2d 1008 (5th Cir. 1977); *Grace Line Inc. v. Todd Shipyards Corp.,* 500 F.2d 361 (9th Cir. 1974); *Mid-America Transportation Co., Inc. v. Rose Barge Line, Inc.,* 477 F.2d 914 (8th Cir. 1973), this suit is not brought to recover damages for loss or injury to a vessel or cargo. *See The President Madison,* 91 F.2d 835, 846 (9th Cir. 1937) ("interest is necessary to make 'just compensation' for the loss of a vessel or the repairs, salvage expenditures, and the like caused by the tort of the colliding offender."). Indeed, the United States does not seek recompense for any loss of its property damaged in a collision. Instead it seeks reimbursement for the expenses it incurred in cleaning up the oil spill. The terms of the collision rule, if not its underlying logic, are clear, *see Moore-McCormack Lines v. Amirault, supra,* 202 F.2d at 898; *In re Great Lakes Dredge & Dock Co.,* 250 F. 916 (D.Mass.1917), and we hold that the rule need not have been applied to this factually distinguishable context. Relying on the more general policy of admiralty law that "the award of interest [on claims unliquidated in nature] lies in the discretion of the admiralty court", *Moore-McCormack Lines v. Amirault, supra,* 202 F.2d at 898, we find no abuse in the allowance of prejudgment interest from the date the United States first presented a bill to the defendants. *See generally Robinson v. Pocahontas, Inc.,* 477 F.2d 1048, 1052 (1st Cir. 1973); *American Union Transport Co. Inc. v. Aguadilla Terminal, Inc.,* 302 F.2d 394, 396 (1st Cir. 1962).

We affirm as well the district court's decision to award interest at a rate of six per cent, the highest rate permissible under the laws of Puerto Rico, P.R.L.A. tit. 31, §§ 3025, 4591 (1968). While a federal court is not bound by the forum's local rate of interest, it is well established that it may use the law of the forum as its guide. Norris, *The Law of Maritime Personal Injuries 3rd,* § 173A (1979). The United States has not cited us to a single case in which a district court was reversed for refusing to award interest above the forum rate, and we decline to do so here. Its argument that a rate of six per cent is unrealistically low in today's money market and therefore that it is "arbitrary for courts to follow such arbitrary rates" proves too much, for it seemingly would invalidate every award of interest guided by a forum rate. And in response to the United States' claims that failure to assess the higher rate amounts to "a handsome reward for obstinacy", we assume that these arguments were made to and considered by the court below, a forum which by this time is intimately acquainted with the conduct of the defendants. Contrary to the United States' suggestions, the court did not state that it was without discretion to exceed the statutory rate. Instead it concluded that that rate "will not be exceeded" here. We are unpersuaded that the court abused its discretion by so deciding, a decision reached after "[c]onsidering all the equities involved".

## 2. *Attorney's Fees*

■ Noting that "[t]here is a first time for everything", the United States claims that it is entitled to attorney's fees. Its theory is that "at least when the United States collectively seeks to recover its citizens' tax money, it should have the same rights as those citizens would have individually, notwithstanding that it does not have all their liabilities."

Whatever the merits of this theory, its time for acceptance has not yet arrived. 28 U.S.C. § 2412 expressly provides:

"Except as otherwise specifically provided by statute, a judgment for costs, as

enumerated in section 1920 of this title *but not including the fees and expenses of attorneys* may be awarded to the prevailing party in any civil action *brought by* or against *the United States* or any agency or official of the United States acting in his official capacity, in any court having jurisdiction of such action." (Emphasis added.)

As the Supreme Court has ruled, "§ 2412 on its face, and in light of its legislative history, generally bars [attorneys' fees] awards, which, if allowable at all, must be expressly provided for by statute." *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 267–68, 95 S.Ct. 1612, 1626, 44 L.Ed.2d 141 (1975); *see, e. g., Adams v. Carlson,* 521 F.2d 168 (7th Cir. 1975); *National Association of Regional Medical Programs v. Mathews,* 179 U.S.App.D.C. 154, 156–57, 551 F.2d 340, 342–43 (1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977).

Despite the United States' wholly unpersuasive assertion that § 2412 does not apply to fee requests by the United States, it is clear that that provision governs the case before us. Thus, absent specific and express authorization by statute, the United States may not recover its fees here. Neither the Federal Water Pollution Control Act nor the Rivers and Harbors Act provides such authorization to the United States, and we are cited to no other statute which could govern this suit. *See* Section 505(d) of FWPCA, 33 U.S.C. § 1365(d) (courts may award fees in *citizen* suits), construed narrowly in *Save Our Sound Fisheries Ass'n v. Callaway,* 429 F.Supp. 1136, 1139–40 (D.R.I.1977). The United States' contention that the local Puerto Rican rule which permits attorney's fees for obstinacy, 32 L.P.R.A., App. II, Rule 44.4(d), can be applied here is unequivocally refuted by the case law. *See Sanabria v. International Longshoremen's Ass'n,* 597 F.2d 312 at 313–314 (1st Cir. 1979); *F. F. Instrument Corp. v. Union de Tronquistas de Puerto Rico,* 558 F.2d 607, 610 n.3 (1st Cir. 1977); *Betancourt v. J. C. Penney Co., Inc.,* 554 F.2d 1206 (1st Cir. 1977). Accordingly, the

district court did not err in denying attorney's fees to the United States.

*The judgment below is affirmed.*