John PINO et al., Plaintiffs,

v.

PROTECTION MARITIME INSURANCE COMPANY, LTD., et al., Defendants.

Civ. A. No. 72–3396–C.

United States District Court,
D. Massachusetts.

May 20, 1980.

Morris D. Katz, Boston, Mass., for plaintiffs.

Carroll E. Ayers, John E. Sutherland, Wakefield, Mass., for defendants.

## OPINION

CAFFREY, Chief Judge.

This admiralty case came before the Court for an assessment of plaintiffs' damages and for a determination of the appropriate permanent equitable relief. In an earlier opinion, this Court held that three of the defendants, Ernest A. Enos (Enos), Protection Maritime Insurance Company, Limited (PMI), and Trans-Atlantic Marine Insurance Company (TA), had tortiously interfered with the employment rights of eight of the plaintiffs by purposely and without privilege demanding higher insurance premiums from the owners of the fishing vessels on which plaintiffs worked. *Pino v. Protection Maritime Insurance Co., Ltd.,* 454 F.Supp. 210 (D.Mass.1978), *aff'd in part and remanded in part,* 599 F.2d 10 (1st Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979). This determination of liability was accompanied by a temporary injunction, to remain in effect pending a hearing on the issue of damages. It enjoined the defendants from:

1. charging any additional premium to the owner of any commercial fishing vessel because he has signed on as a crewmember any one or more of plaintiffs Powers, Nugent, Vaiarella, Pino, Thompson, Taylor, Susanno, and Matthews; and

2. demanding as a condition for the issuance, maintenance, or continuation of any insurance policy that the owner of the fishing vessel make available to any of the three defendants named above a settlement sheet which contains the names of any crewmember.

On appeal, the First Circuit upheld both this Court's determination of liability and its authority to issue equitable relief, but remanded for reconsideration as to the proper scope of the injunction. 599 F.2d at 14, 16–17.

### DAMAGES

On February 19, 1980, this case came forward for an evidentiary hearing to assess the damages sustained by the following eight plaintiffs: Willis Powers, Robert Nugent, Michael Vaiarella, John Pino, Russell A. Thompson, Robert Taylor, Lorenzo Susanno, and Leslie Matthews. Each of the eight plaintiffs testified briefly as to the amount of their earnings before and after being "blacklisted" by defendants, the approximate date on which they first realized they were "blacklisted," and any other damages they might have sustained. The plaintiffs also called two other witnesses to testify as to the average earnings of Gloucester fishermen from 1969 to 1979. The defendants called no witnesses and introduced no evidence.

Each of the plaintiffs has asked for a judgment in the amount of $50,000, plus attorney's fees. The two elements of damages which plaintiffs are seeking to recover are 1) impairment of their earning capacity, and 2) humiliation and personal degradation as a consequence of the circulation by the defendants of information that the plaintiffs were not to be employed by owners of fishing vessels based in Gloucester, Massachusetts. In reaching a separate award for each plaintiff, the Court has made the following findings and rulings of general applicability.

In order to assess the damages for impairment of plaintiffs' earning capacity, the Court first had to determine what the plaintiffs would have earned had their employment rights not been interfered with. As noted, the plaintiffs called two witnesses to testify regarding this issue. The first witness, Mr. Leo Sabato, is employed as the port agent for the Seafarer's International Union in Gloucester. Mr. Sabato testified that in his capacity as port agent he is responsible for collecting settlement sheets after each fishing vessel completes a voyage. He further testified that the earnings of each fisherman are listed on these settlement sheets. In response to a question as to the average earnings of Gloucester fishermen from 1969 to 1979, Mr. Sabato stated that the average earnings had doubled or tripled over that period due to the adoption of the 200–mile limit and due to a general increase in the price of fish. On cross-examination, Mr. Sabato conceded that only union vessels submitted settlement sheets and that only 60 of the 200 fishing vessels in the Gloucester fleet were under contract with the union.

The second witness, Chris A. Theodore, is a Professor in the School of Management at Boston University. Professor Theodore submitted an extensive curriculum vitae showing, among other things, that he possesses a Ph.D. in Economics from Boston University and that he has written extensively on the subject of the insurance protection of fishing vessels. At the request of plaintiffs, Professor Theodore prepared a chart, admitted into evidence at the hearing, which estimated a Gloucester fisherman's earnings for each year since 1969. The estimates were based on the assumption that a fisherman earned $10,000 in 1969; estimated earnings thereafter were calculated from the percentage dollar increase in fish and shellfish landings for each year since 1969. According to Professor Theodore's estimates, a Gloucester fisherman who earned $10,000 in 1969 would have earned $43,150 in 1979.

On the whole, I have not given much weight to the testimony of Professor Theodore, primarily because he prepared the chart at plaintiffs' request and because his calculation assumes a perfectly linear relationship between increases in the dollar level of fish landings and increases in fisherman's earnings. Generally, I would have preferred to have seen evidence of what other fishermen actually earned in the same time period. However, in view of Mr. Sabato's corroborative testimony that fishermen's earnings had doubled or tripled since 1969, in calculating damages I have given

some weight to the general increase in the earnings of Gloucester fishermen since 1969.

I was generally dissatisfied with the evidence as to the money actually earned by the eight plaintiffs, consisting as it did of only the testimony by the plaintiffs themselves as to what they earned from various jobs after being blacklisted. It would have been preferable to introduce their individual state or Federal tax returns or other documentation. In calculating damages, I have therefore discounted the plaintiffs' testimony substantially although I believe that they suffered some loss in earnings as the result of the defendants' tortious conduct.

■ As regards the plaintiffs' claim based on the humiliation and personal degradation they have suffered, I rule that such damages are recoverable in this case since emotional distress was reasonably to be expected to result from defendants' purposeful interference with plaintiffs' employment opportunities. *See* Restatement (Second) of Torts § 774A; W. Prosser, Law of Torts, § 29, at 949 (4th ed. 1971). On this basis, I have awarded each plaintiff $1,000 for the humiliation and emotional distress they have suffered.

■ Plaintiffs also seek an award of prejudgment interest. The defendants' only opposition to the plaintiffs' request for prejudgment interest is that the plaintiffs did not bring this issue to the Court's attention at the hearing but instead filed a motion after the hearing had concluded. This ground for opposition is patently frivolous and I will not consider it further.

■ The rule in admiralty is that an award of prejudgment interest on claims unliquidated in nature lies in the discretion of the Court. *United States v. M/V Zoe Colocotroni,* 602 F.2d 12, 14 (1st Cir. 1979); *Moore-McCormack Lines, Inc. v. Amirault,* 202 F.2d 893, 898 (1st Cir. 1953); *Petition of Risdal & Anderson, Inc.,* 291 F.Supp. 353, 358 (D.Mass.1968). The fact that a plaintiff's action is based on unliquidated tort claims, as here, does not bar the award of

prejudgment interest. *Petition of City of New York,* 332 F.2d 1006, 1008 (2d Cir.), cert. denied sub nom. *City of New York v. Bernstein,* 379 U.S. 922, 85 S.Ct. 277, 13 L.Ed.2d 335 (1964); *Rivera v. Rederi A/B Nordstjernan,* 456 F.2d 970, 976 (1st Cir.), cert. denied, 409 U.S. 876, 93 S.Ct. 124, 34 L.Ed.2d 128 (1972); *see Risdal & Anderson, supra.* I can find no equitable reason why the plaintiffs here should not receive, and I therefore exercise my discretion to award, prejudgment interest.

■ The purpose for awarding prejudgment interest is to compensate the injured party for delay in receiving money damages in order that he be made whole. *O'Donnell Transp. Co. v. City of New York,* 215 F.2d 92, 95 (2d Cir. 1954); *Amirault, supra,* at 895; *Nicodemisen v. O/S/F/V Dartmouth,* 157 F.Supp. 339, 341 (D.Mass. 1957). A tort plaintiff, however, should only be awarded prejudgment interest to the extent his damages are based on claims pecuniary, as opposed to personal, in nature. *Moore-McCormack Lines, Inc. v. Richardson,* 295 F.2d 583, 593 (2d Cir. 1961), cert. denied, 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 (1962); McCormick, Damages, § 56; *but see Risdal & Anderson, supra,* at 359. I will therefore award plaintiffs prejudgment interest on their claim for diminished earning capacity but not on their claim for humiliation and personal degradation.

As regards the rate of interest, it has been noted that the "figure of 6% is historical," although "unrealistic." *Nicodemisen, supra,* at 341. And, the First Circuit has recently stated that although an admiralty court "is not bound by the forum's local rate of interest, it is well established that it may use the law of the forum as its guide." *M/V Zoe Colocotroni, supra,* at 14. Massachusetts currently awards prejudgment interest at the rate of 8%, Mass.Gen.Laws ch. 231, § 6B; prior to August 14, 1974, Massachusetts awarded interest at the rate of 6%. *Porter v. Clerk of the Superior Court,* 368 Mass. 116, 119, 330 N.E.2d 206 (1975). Considering the length of time this case has been pending, *see Risdal & Anderson, supra,* at 358, I have awarded interest at the rate

of 6% from the date the loss was incurred to the date of judgment, even though the adequacy of that rate has been questioned and even though I could permissibly follow the Massachusetts statute and award a higher rate.

The plaintiffs have requested an award of punitive damages. It is settled in this Circuit that an admiralty court has discretion to award a seaman punitive damages when a shipowner's refusal to pay maintenance and cure was the result of a "wanton and intentional" disregard of the seaman's legal rights. *Robinson v. Pocahontas, Inc.*, 477 F.2d 1048, 1051–52 (1st Cir. 1973); *see Vaughan v. Atkinson*, 369 U.S. 527, 540, 82 S.Ct. 997, 1004, 8 L.Ed.2d 88 (Stewart, J., dissenting). I rule that a plaintiff in admiralty should also be able to recover punitive damages, in accordance with the traditional concepts of the law of damages, when other legal rights, such as his right to retain employment, have been wilfully and tortiously interfered with. See *The Amiable Nancy*, 16 U.S. 546, 548–49, 4 L.Ed. 456 (1818). In order to award such damages under the traditional law of damages, it need not appear that the defendant was actuated by ill will or evil motive as long as defendant's actions were "so wanton and reckless as to evince a conscious disregard of the rights of others." McCormick, Damages, § 79; *see Vaughan, supra*, 369 U.S. at 540, 82 S.Ct. at 1004.

Even though this court expressed no opinion in its earlier decision as to whether "defendant insurers acted with malice or ill will, since such a finding is not essential to proof of Section 766 liability," 454 F.Supp. at 224, other findings by the Court regarding the intentional and bad faith conduct by the defendants constitute a more than sufficient predicate for an award of punitive damages. Specifically, the Court found that

> "eight of the fourteen plaintiffs were designated as added-premium seamen not for legitimate risk-related reasons but because of their inability to amicably settle insurance claims to Enos' satisfaction, and because of their retention of counsel, filing of personal injury actions, and pros-

ecution of those claims to judgment, as they had every right to do." *Id.* at 218. The Court also found that the defendants "knew that the consequences of their practice of levying exorbitant added P & I premiums would be the discharge of the designated seamen by the boat owners, and the discouragement of these plaintiffs from seeking legal representation and from prosecuting work-related injury claims," and further that "the added premium constituted a purposeful inducement and cause on the part of the defendant insurers to disrupt or abort the relationships of employment at will existing between the fishermen and the boat owners." *Id.* at 224. These findings clearly show that the defendants acted in wanton and intentional disregard of the plaintiffs' employment rights, making this case an especially appropriate one for an award of punitive damages. Moreover, it is important to note that this is not the first occasion that the defendants have been involved in litigation regarding their insurance practices. Prior to November 16, 1971, defendants had illegally employed an exclusionary endorsement scheme to prevent certain fishermen from securing employment. When that practice was enjoined as the result of a series of federal and state decisions, see 454 F.Supp. at 215, defendants adopted the substitute practice of charging added premiums for certain fishermen and requiring boat owners to submit settlement sheets after each voyage, listing among other items the name of each crew member. *Id.* at 215–16, 224. Defendants' blatant disregard for and circumvention of the earlier court decisions is an additional reason for awarding punitive damages. I have therefore awarded each plaintiff $9,000 punitive damages.

The Court's assessment of damages for each of the eight plaintiffs, including all the elements discussed above, is as follows:

| | | |
|---|---|---|
| 1) | Willis Powers | $61,950 |
| 2) | Robert Nugent | $35,392 |
| 3) | Michael Vaiarella | $47,774 |
| 4) | John Pino | $41,822 |
| 5) | Russell A. Thompson | $52,147 |
| 6) | Robert Taylor | $14,444 |

| 7) Lorenzo Susanno | $66,425 |
| 8) Leslie Matthews | $39,010 |

The plaintiffs have also requested attorney's fees. Assuming for the moment that defendants' bad faith conduct in interfering with plaintiffs' employment rights would authorize a Court to award attorney's fees, *but see Hutto v. Finney*, 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978), I have not awarded fees because I have already awarded punitive damages. See *Cordeco Development Corp. v. Santiago Vasquez*, 539 F.2d 256, 263 (1st Cir.), *cert. denied*, 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed.2d 586 (1976).

## INJUNCTIVE RELIEF

I rule that permanent injunctive relief is appropriate in this case and an order will issue enjoining defendants Enos, TA, and PMI from:

1. charging any premium to the owner of any commercial fishing vessel because he has signed on as a crewmember any one or more of plaintiffs Powers, Nugent, Vaiarella, Pino, Thompson, Taylor, Susanno, and Matthews, which premium is not based on legitimate and objective ratesetting criteria; and

2. issuing or circulating any list containing the names of these or other fishermen who have sought counsel to secure their legal rights; and

3. adopting any other practice or engaging in any act tending to limit the employment or employability of plaintiffs.