JOHN PINO *vs.* TRANS-ATLANTIC MARINE, INC. & another.

Suffolk.   October 6, 1970. — December 30, 1970.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, REARDON, & QUIRICO, JJ.

*Unlawful Interference.   Malice.   Equity Jurisdiction,* Unlawful inter-
     ference.   *Words,* "Malice."

In a suit in equity by a fisherman of Gloucester against the manager of
   a marine insurance underwriter providing insurance for approximately
   seventy-five per cent of the fishing vessels of that port and against
   the underwriter, conclusions by the trial judge that actions of the
   defendants were "malicious in law" and constituted unlawful inter-
   ference with the plaintiff's employment, and that he was entitled to
   damages and to a decree enjoining the defendants from "any and all
   intentional and malicious acts which . . . interfere with the plain-
   tiff's employment as a . . . fisherman" were warranted by the judge's
   findings, including findings that while serving on a specified vessel
   the plaintiff had sustained an injury to his hand and had retained
   certain counsel to institute legal action, that the defendants there-
   after refused to extend insurance coverage to the plaintiff upon his
   joining the complement of another vessel and his employment was
   terminated, as the defendants knew it would be, and he was unable to
   obtain "any employment at sea," that his claim for injuries was "not
   baseless," as asserted by the manager, that the "real reason" for the
   defendants' exclusion of coverage was because the plaintiff was prose-
   cuting his claim for injuries through such counsel, and that the de-
   fendants had also excluded from coverage seven or eight other Glouces-
   ter fishermen prosecuting claims for personal injuries through the
   same counsel.   [501–502, 504]
The plaintiff in a suit in equity was not barred from injunctive relief
   against unlawful interference by the defendants with his employment
   because his employment was "not guaranteed" and was terminable
   at will, nor was such relief an "unreasonable restraint" on the de-
   fendants' right to carry on business.   [504–505]

BILL IN EQUITY filed in the Superior Court on April 16,
1969.

The suit was heard by *Roy,* J.

*Solomon Sandler* for the defendants.

*David B. Kaplan* for the plaintiff.

SPIEGEL, J.   This is a bill in equity in which the plaintiff

seeks, inter alia, to restrain the defendants [1] "from further interference with the plaintiff's employability by excluding him from insurance coverage." The defendants appealed from a final decree assessing damages "of the plaintiff as against" the defendants and permanently enjoining them from "any and all intentional and malicious acts which prevent or interfere with the plaintiff's employment as a seaman or fisherman." [2] The evidence is reported.

We state pertinent findings of the trial judge. "Trans-Atlantic . . . is an underwriting 'manager' for several insurance companies writing marine risks. Enos is responsible for all marine underwriting decisions of Trans-Atlantic. Trans-Atlantic is empowered on behalf of the . . . companies to make all decisions as to the risks to be accepted, to furnish the insurance, to establish conditions in respect thereof and to set the rates. . . . Owners or operators of vessels procure this insurance. It includes protection and coverage in respect of seamen's injuries and claims arising therefrom under general maritime and admiralty law and the provisions of the Jones Act. Approximately 75 per cent of the fishing vessels sailing out of the Port of Gloucester are covered by this type of insurance procured through Trans-Atlantic. In 1967 . . . [the plaintiff], while serving as a member of the crew on F/V WILD DUCK, sustained an injury to his hand which required an operation in May, 1968. He returned to his occupation as a fisherman in late summer, 1968 and in the fall that year he became a member of the crew on F/V ST. ANTHONY, worked aboard said vessel until January, 1969 without incident or injury and performed his duties to the satisfaction of the captain. He had . . . been granted regular employment on that vessel. In connection with the injury sustained on F/V WILD DUCK,

---

[1] "Defendants" herein refers solely to the Trans-Atlantic Marine, Inc. (Trans-Atlantic) and to Ernest A. Enos. The final decree dismissed the bill against a third defendant, The Insurance Company of the State of Pennsylvania.

[2] The final decree also stated that "the plaintiff shall not be barred from establishing any loss or damage occurring after June 30, 1969, by reason of the actions of . . . [the defendants] if this Decree does not become effective until after said date."

. . . [the plaintiff] consulted . . . attorneys . . . who instituted legal action. The case is pending in the . . . Superior Court. In January, 1969, F/V ST. ANTHONY was tied up for conversion from a dragger to a seiner. At that time . . . [the plaintiff] was informed that when the vessel returned to sea, he would be included as part of the ship's complement. On or about March 7, 1969, Trans-Atlantic, knowing that the plaintiff was serving on the vessel, informed its skipper that protection and indemnity coverage would not extend to . . . [the plaintiff]. As a result, the plaintiff's employment was terminated. . . . [He] has sought employment on a number of other vessels but, since Trans-Atlantic places the insurance on at least 75 per cent of the vessels in Gloucester, he has been unable to obtain any employment at sea" although "there is a shortage of fishermen to man the vessels sailing from Gloucester." The plaintiff "has been a fisherman for practically all of his life and possesses no other substantial skills for other types of employment comparable in compensation to that received by him as a fisherman. As a fisherman . . . he earned about $7,800.00 a year."

"It is not the policy or practice of . . . [the defendants] to refuse insurance coverage to a vessel whose crew includes a member who has sustained injury in the course of his employment, nor . . . to exclude such an injured seaman from coverage otherwise offered to the vessel." Enos's reason for excluding the plaintiff was that the plaintiff's claim was "baseless."

The plaintiff, while a member of the crew, was provided with meals. "At one of his meals, a lobster was served him which he was opening with a knife which slipped causing injury. The meal was served at a table with collapsible features." The judge in his findings stated that the plaintiff "testified that the fittings which held the table in a rigid position were faulty." [3] He also stated that there

---

[3] The pertinent portion of the plaintiff's testimony regarding that point follows: The table "is a foot wide and five feet long, and then we have what they call leaf table that bends down. When we have to eat, we bring the leaf table up to make the table wider. Now, on the end of this table, there is

"were justiciable issues in . . . [the plaintiff's] claim re-
lating to whether . . . the injury occurred in the course of
his employment and whether . . . the table as part of the
vessel was in good condition"; that he was not "in any
way deciding whether . . . [the plaintiff] . . . [was] en-
titled to recover on his claim . . . [and] that the claim
and his legal action pending in the Superior Court . . .
[was] not baseless."

The denial of coverage to the plaintiff was "not the re-
sult of a legitimate . . . business judgment. . . . [T]he
real reason . . . was because . . . [the plaintiff] was prose-
cuting his claim for injuries with legal representation and,
more particularly, because he had engaged the services of
. . . [the plaintiff's lawyers.]"

"In the last year . . . [the defendants] have excluded
from insurance coverage seven or eight other Gloucester
fishermen who had made claims for personal injuries. All
of these men have prosecuted or are prosecuting their claims
by retaining" the same attorneys as those who are represent-
ing the plaintiff in the case at bar.

It was "reasonably foreseeable that the exclusion of the
plaintiff from coverage . . . would result in his loss of em-
ployment" and "Enos in fact knew that this would be the
result of his actions." The defendants "intentionally took
the action they did well knowing what the result would be."

The judge ruled that (1) The "actions" of the defendants
in respect to the plaintiff "were done intentionally, mali-
ciously and within the technical meaning of the word

a post that comes down with a chain hooked up on this post and on the end
of this chain you are supposed to put the end of this leaf. It has an eye-bolt
on the end of that. When you have that, there is a slide that is supposed to
go under that on the firm part of the table, and on the leaf part to hold that
table level, to hold the leaf level with the stationary table. This boat here
did not have any slides to go under this leaf and also the chain that was hold-
ing that part of the leaf was loose; in other words, it was longer, it didn't
hold that part of the table snug up to the stationary table. So, when I took
my knife out to open a claw of the lobster, I was sitting on the edge. When
you sit on the edge, that leaf comes up right tight like this, you don't get
nowhere near, you don't get two foot away from the central part of the table.
When I stuck my knife in the claw of the lobster, the boat gave a lurch and
I come up like this, stood right up, the leaf come up with me, and the knife
slipped out of the lobster claw and I cut my hand, my finger. When I did
cut the finger, I cut it so bad that it crippled the finger altogether."

'malice' as used in our law." (2) "The actions of . . . [the defendants] constitute an unjustifiable and actionable interference with . . . [the plaintiff's] employment as a seaman." (3) The actions of the defendants "constitute a form of coercion which foreseeably may prevent or discourage injured seamen sailing out of Gloucester from seeking legal representation or legal representation of their untrammeled choice." (4) The plaintiff "has been deprived of his employment by reason of the actions of" the defendants and is entitled to damages. (5) The plaintiff "is entitled to relief" enjoining the defendants from "engaging in any malicious action which would deprive or interfere with . . . [the plaintiff's] employment as a seaman or fisherman."

The first contention of the defendants, dealt with rather summarily in their brief, is that there can be no "conspiracy" because the defendant Enos was the "sole authority to determine the courses to be taken and the decisions to be made by way of settlement or otherwise on all claims brought against the company." [4]  However, the plaintiff's claim is not based on the theory of conspiracy, nor do the judge's findings and rulings rest on that theory. Therefore we see no need to engage in a discussion of this point. The defendants concede in their brief that the "main issue" in the case before us is whether the actions of the defendants constitute an unjustifiable and actionable interference with the plaintiff's employment as a seaman.

The principal thrust of the defendants' arguments appears to point to the conclusion that they "had the right not to issue protection coverage on individuals they did not want to insure in the absence of statutory or other regulations." In support of this conclusion they state, inter alia, that the defendant Enos "did not want to enter into contracts for the benefit of one who, *in his opinion*, had a baseless claim, and had a physical incapacity." The latter

---

[4] There is a brief paragraph in the plaintiff's bill which states "that the conduct of the defendants amount[s] to a civil conspiracy."

statement is in utter disregard of the amply justified findings of the judge that the plaintiff's claim was not a baseless one and that the "real reason" the defendants excluded the plaintiff from coverage was "because he was prosecuting his claim for injuries with legal representation and, more particularly, because he had engaged the services" of certain attorneys.

The defendants' arguments on this point also totally ignore the findings of the judge that the defendants have also excluded from coverage seven or eight other Gloucester fishermen who had made claims for personal injuries and were represented by the same attorneys who were retained by the plaintiff in his personal injury claim. This could hardly be termed a coincidence.

In a somewhat analogous case it was held that "where a third party induces an employer to discharge his employee who is working under a contract terminable at will, but under which the employment would have continued indefinitely in accordance with the desire of the employer, except for such interference, and where the only motive moving the third party is a desire to injure the employee and to benefit himself at the expense of the employee by compelling the latter to surrender an alleged cause of action . . . a cause of action arises in favor of the employee against the third party." *London Guarantee & Acc. Co.* v. *Horn,* 206 Ill. 493, 507–508. We think that the rule enunciated in that case is equally applicable to the facts in the case before us.

The case of *Owen* v. *Williams,* 322 Mass. 356, also bears a strong similarity to the instant one. There we allowed recovery to a "special nurse" who charged that "the defendant, a physician on the staff of a hospital . . . wrongfully, maliciously, unlawfully and with intent to injure the plaintiff 'procured' the authorities of the hospital to dismiss the plaintiff 'from a case . . .' and to prohibit her from thereafter being called as a special nurse at the hospital. . . ." *Id.* at 356–357. We held that "[t]he governing principle of law is set forth in Restatement: Torts,

§ 766, in these words, '. . . one who, without a privilege to do so, induces or otherwise purposely causes a third person not to . . . enter into or continue a business relation with another is liable to the other for the harm caused thereby.' Our own decisions appear to be in accord with this statement." *Id.* at 360. We added that "the burden of proof was upon the defendant to establish the existence of . . . [a privileged] occasion." *Id.* at 360. The defendants, however, cite the case of *Tye* v. *Finkelstein,* 160 F. Supp. 666 (D. Mass.), where the court ruled that "[r]ather than for the defendant here to have to prove 'justification,' . . . the burden is on the plaintiff to prove malice . . . ." *Id.* at 667–668.

We are satisfied that the plaintiff in the instant case has sustained the burden of proving "malice" on the part of the defendants. There is no lawful justification or cause for the defendants to decide unilaterally that the plaintiff's claim was baseless and to attempt to punish or penalize him for prosecuting the claim. While "malice in common acceptation means ill will against a person . . . in its legal sense it means a wrongful act, done intentionally, without just cause or excuse." *McGurk* v. *Cronenwett,* 199 Mass. 457, 462. The defendants' "motives" may have been "good" from their point of view, in that their conduct may have been financially beneficial to them, but their conduct can still be held "malicious in law." We have held that "[i]f such interference was intentional and without lawful justification it was malicious in law although it arose from good motives and without express malice." *Grammenos* v. *Zolotas,* 356 Mass. 594, 597, and cases cited. Applying this standard, the judge was amply justified in concluding that the defendants' actions were "malicious in law."

The defendants also seem to argue that "injunctive relief" may not be "an appropriate remedy." They contend that "[r]egardless of whether . . . [they] had refused to issue protection coverage of . . . [the plaintiff, his] employment as a crewman aboard the 'St. Anthony' is not guaranteed to him" and that "[a]n injunction against the

defendants should not be used as a means to give the plaintiff greater rights than he would have had if there had been no alleged interference with his contract of employment." We do not believe that the plaintiff will obtain "greater rights" as a result of the injunction granted in this suit than he otherwise would have. Whether he obtains employment in the future may depend upon various factors, but should not be dependent upon the arbitrary action of the defendants.

Even though the plaintiff's "contract of employment" may be terminable at the will of either party, the plaintiff is still entitled to appropriate remedies to prevent the defendants from unlawfully interfering with his employment. This right to terminate "does not relieve the defendant[s], whose wrongful act[s] and not the will of the employer -caused . . . [the plaintiff] to lose a position, in which . . . .[it] could . . . [be found] that so long as his work proved satisfactory his employment would have continued . . . ." *Lopes* v. *Connolly,* 210 Mass. 487, 494. *Moran* v. *Dunphy,* 177 Mass. 485, 487.

In a concluding argument, the defendants attempt to invoke "the countervailing principle of law which states, in short, that the Court will protect the right of an individual to carry on his business free from unreasonable restraint." We are of opinion that the relief granted the plaintiff does not constitute such "unreasonable restraint."

*Decree affirmed with costs of appeal.*