RYAN, ELLIOTT AND COMPANY, INC. *vs.* LEGGAT, McCALL
& WERNER, INC.

Suffolk.  May 17, 1979. – November 15, 1979.

Present: GOODMAN, PERRETTA, & KASS, JJ.

*Unlawful Interference.   Practice, Civil,* Motion to dismiss.

In an action for intentional interference with contractual relation-
ships between the plaintiff and two of its employees, the evidence
warranted findings that the defendant reasonably relied upon the
employees' representations that, although they were under con-
tract to the plaintiff, their attorneys had advised them they were
free to leave their employment, that the defendant was not aware
of the five-year term provisions of their contracts, that the defend-
ant's ignorance was not due to a wilful refusal to ascertain the
facts, and that the defendant had not induced or otherwise pur-
posely caused the employees to leave the plaintiff's employment.
[687-693]

CIVIL ACTION commenced in the Superior Court on De-
cember 22, 1976.

The case was heard by *Nixon,* J., a District Court
judge sitting under statutory authority.

*Raymond M. Kwasnick (Stanley H. Rudman* with him)
for the plaintiff.

*Francis H. Fox* for the defendant.

PERRETTA, J.  The plaintiff, Ryan, Elliott and Company,
Inc. (Ryan), proceeded to trial in the Superior Court on so
much of its complaint as alleged that the defendant, Leg-
gat, McCall & Werner, Inc. (Leggat), had intentionally
interfered with the contractual relationships between
Ryan and two of its employees.[1]  Ryan alleged that Leg-

---

[1] Ryan also alleged in its complaint that Leggat had wrongfully
used confidential information obtained from its two former employ-

gat had offered them employment, thereby inducing and otherwise causing them to breach their five-year employment contracts with Ryan. When Ryan completed presenting its evidence, Leggat made a motion which the trial judge treated as one filed under Mass.R.Civ.P. 41(b)(2),[2] 365 Mass. 804 (1974); he made findings of fact pursuant to Mass.R.Civ.P. 52(a), 365 Mass. 816-817 (1974), and ordered the claim dismissed on its merits. We affirm the ensuing judgment dismissing the plaintiff's complaint.[3]

We summarize the facts as taken from the judge's findings. John B. Griffith and Sargent L. Goodchild were employees of Ryan, a commercial and industrial real estate brokerage firm which is a business competitor of Leggat. Although employment contracts in this field of business are rare, especially for a fixed term of years, both men had five-year contracts with Ryan, and these contracts were in effect at the times material to this dispute. For some time prior to August of 1975 the two men had been dissatisfied with their employment situations at Ryan, and they had resolved to leave the firm, although they had set no definite termination date. Each sought the advice of his attorney about leaving

---

ees. This second claim was separated from the claim of wrongful interference with contractual relationships, and after the order of dismissal was entered on the first claim, Ryan proceeded with its evidence on the second claim. That second claim ended in a finding for Leggat which Ryan does not now contest.

[2] The applicable portion of Mass.R.Civ.P. 41(b)(2) provides: "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence."

[3] That judgment was entered after the finding for Leggat on the second claim. See note 1, *supra*, and Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974).

Ryan, Griffith doing so as early as April, 1975. Their plan, then, was to form a new brokerage firm along with two other Ryan employees. The four men engaged in discussions about this plan from June 8 through August 13, 1975; they prepared financial proposals and cash flow data and submitted this information to a business consultant and a venture capital specialist for their review. These steps to go into business for themselves continued as late as July 31, 1975.

During the first two weeks of August, 1975, Griffith did not perform services for Ryan in any "meaningful way." On August 4 Goodchild contacted a principal at Leggat, requesting an employment interview with that firm. They arranged an appointment for that afternoon, and Goodchild met with most, if not all, of Leggat's principals. He told them he was leaving Ryan due to long-standing problems. He further advised them that he and Griffith, as well as other employees, were exploring the possibility of establishing their own firm but that he also wished to explore the possibility of working at Leggat. On August 6 Griffith also contacted Leggat to arrange for an appointment; the next day he met with a principal of Leggat and related to him substantially the same facts as Goodchild had. He repeated that information to all of Leggat's principals on August 11, adding that he and Goodchild had consulted with their attorneys concerning their employment contracts and that each had been advised that he was free to leave Ryan. In reliance on this last statement, all of Leggat's principals met with Griffith and Goodchild that same afternoon, and they told the two men that Leggat would employ them if and when they left Ryan. Griffith and Goodchild resigned from Ryan three days later, and thereafter Leggat hired them.

Ryan argues that it was error to allow the motion to dismiss because its evidence established a prima facie case and the burden of proof had shifted to Leggat to show justification for its actions. In *Owen* v. *Williams,*

322 Mass. 356, 360 (1948), the court stated: "The governing principle of law is set forth in Restatement: Torts, § 766, in these words, '. . . one who, without a privilege to do so, induces or otherwise purposely causes a third person not to . . . enter into or continue a business relation with another is liable to the other for the harm caused thereby.' Our own decisions appear to be in accord with this statement. . . . As in other instances where justification is required, the burden of proof was upon the defendant to establish the existence of such an occasion." In *Pino* v. *Trans-Atlantic Marine, Inc.,* 358 Mass. 498, 504 (1970), the court, in its approval of the *Owen* holding, noted that in *Tye* v. *Finkelstein,* 160 F.Supp. 666, 667-668 (D. Mass. 1958), it was held that the burden was on the plaintiff to prove malice rather than upon the defendant to prove justification. It was determined in *Pino,* 358 Mass. at 504, that the plaintiff did prove malice, as defined in *McGurk* v. *Cronenwett,* 199 Mass. 457, 462 (1908) ("in its legal sense it means a wrongful act, done intentionally, without just cause or excuse"), and in *Grammenos* v. *Zolotas,* 356 Mass. 594, 597 (1970) ("[i]f such interference was intentional and without lawful justification it was malicious in law although it arose from good motives and without express malice"). Based upon these cases, Ryan insists that it sustained its burden of proof and thus the motion should not have been allowed, and Leggat should have been required to go forward and prove a privilege or justification for its conduct.

We note first that in passing upon a motion under the second sentence of rule 41(b)(2) a trial judge is not limited to that standard of proof required for a directed verdict (see e.g., *Petrangelo* v. *Pollard,* 356 Mass. 696, 697 [1970]; *E. H. Hall Co.* v. *U. S. Plastics Corp.,* 2 Mass. App. Ct. 169, 171 [1974]); rather, the judge is free to weigh the evidence and resolve all questions of credibility, ambiguity, and contradiction in reaching a decision. See *Huber* v. *American President Lines, Ltd.,* 240 F.2d

778, 779 & n.2 (2d Cir. 1957); *A & N Club* v. *Great Am. Ins. Co.,* 404 F.2d 100, 103 (6th Cir. 1968); *Woods* v. *North Am. Rockwell Corp.,* 480 F.2d 644, 645-646 (10th Cir. 1973); *Shull* v. *Dain, Kalman & Quail, Inc.,* 561 F.2d 152, 154-155 (8th Cir. 1977), cert. denied, 434 U.S. 1086 (1978); 9 Wright & Miller, Federal Practice and Procedure § 2371 (1971). See also Smith & Zobel, Rules Practice § 41.10 (1977). Consistent with those criteria, the trial judge made those findings of fact which we have previously summarized and concluded that Leggat had not intentionally interfered with the contracts and that it had neither induced nor otherwise purposely caused the business relationships between Ryan and its two employees to be discontinued. If the trial judge's findings and conclusions are proper, then the question of Leggat's "malice" or "lack of justification" are irrelevant, because there was no interference or wrongful act in the first instance and Ryan failed in its attempt to show a right to relief.

Ryan argues that the facts upon which the conclusions are based are clearly erroneous[4] and that the findings and conclusions are "tainted by an error of law." *New England Canteen Serv., Inc.* v. *Ashley,* 372 Mass. 671, 674 (1977). Because a review of the transcript indicates that the findings are warranted by the evidence, we next determine whether the findings and conclusions are free from error and are "consistent with the relevant legal standards." *First Natl. Bank* v. *Brink,* 372 Mass. 257, 263 (1977).

---

[4] While Ryan frames its argument in terms of attacking the conclusions on the basis of legal error, it frequently asserts that the findings are clearly erroneous because they do not reflect certain evidence which Ryan deems compelling. Leggat urges us not to review the sufficiency of the evidentiary basis of the findings because of Ryan's failure to comply with Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), and 18(b), 365 Mass. 865 (1974). We decline to adopt Leggat's position, and we review the findings and the conclusions of law in all respects. See Mass.R.A.P. 2, 365 Mass. 845 (1974); *New England Canteen Serv., Inc.* v. *Ashley,* 372 Mass. 671, 675 (1977).

The trial judge concluded that because Leggat reasonably relied upon the representations of Griffith and Goodchild, it did not know of the five-year term provisions of their contracts and, therefore, did not intentionally and maliciously interfere with Ryan's contractual relations with its employees. Ryan relies upon *McGurk,* 199 Mass. at 461-462, *Anderson* v. *Moskovitz,* 260 Mass. 523, 525-526 (1927), and *Grammenos,* 356 Mass. at 596-597, for the proposition that knowledge of the mere existence of a contract imposed a duty upon Leggat to refrain from offering the men employment and urges that the fact that Leggat was mistaken in its belief as to the men's immediate availability does not excuse its action. It appears that the defendants in those cases, however, had knowledge of the specifics of the contracts in question, and their conduct was not excused merely because they were motivated by, or had acted out of, a mistaken belief as to the legal significance of the known facts. See *Engine Specialties, Inc.* v. *Bombardier Ltd.,* 330 F. Supp. 762, 768 n.5 (D. Mass. 1971), aff'd 454 F.2d 527 (1st Cir. 1972); Restatement (Second) of Torts § 766, Comment (e), (Tent. Draft No. 14, 1969); Restatement (Second) of Torts § 766, Comment (i) (1977).[5] When the judge found that Leggat had no knowledge of the terms of the contract, it became germane for him to consider why. If Leggat's offers of employment were based upon an intentional and wilful ignorance of the facts, its conduct was no more excusable than if based upon a mistaken belief of the legal significance of known facts. The judge found that Leggat's reliance upon the representations of Griffith and Goodchild was reasonable in the cir-

---

[5]Comment (i) to § 766 explains that: "To be subject to liability under the rule stated in this Section, the actor must have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract. Although the actor's conduct is in fact the cause of another's failure to perform a contract, the actor does not induce or otherwise intentionally cause that failure if he has no knowledge of the contract."

cumstances. Service contracts for a specific term of years were extremely rare in the real estate brokerage business, and the men had told Leggat that their attorneys had advised them they were free to leave Ryan and that they were committed to doing so. The judge, therefore, was not clearly wrong in concluding that Leggat's ignorance was not due to a wilful refusal to ascertain the facts before making offers of employment or to an improper desire to induce or otherwise cause the men to leave their employment with Ryan. See *Kelley* v. *Central Hanover Bank & Trust Co.,* 11 F.Supp. 497, 513 (S.D.N.Y. 1935), rev'd on other grounds, 85 F.2d 61 (2d Cir. 1936); *United Aircraft Corp.* v. *Boreen,* 413 F.2d 694, 699 (3d Cir. 1969); Restatement (Second) of Torts § 766, Comment h.[6]

In addition to concluding that Leggat had not intentionally interfered with Ryan's contractual relations, the judge concluded that Leggat had not induced or otherwise purposely caused Griffith and Goodchild to leave Ryan. In reliance upon *Pino,* 358 Mass. at 501, Ryan asserts the trial judge is in error because Griffith's and Goodchild's resignations were the foreseeable, natural, and probable consequences of Leggat's offers of employment. What Ryan overlooks, however, is that in *Pino* the trial judge found that the defendants knew their conduct would result in the plaintiff's loss of employment, and that the defendants "'intentionally took the action they did well knowing what the result would be,'" (358 Mass. at 501) and it was therefore purposeful. It is settled law that "whether the actor's conduct caused the third person to break his contract with the other raises an issue of fact." Restatement (Second) of Torts § 766,

---

[6]Comment h to § 766 provides: "The rule stated in this Section applies to any intentional causation whether by inducement or otherwise. The essential thing is the intent to cause the result. If the actor does not have this intent, his conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other."

Comment o.  See *Owen,* 322 Mass. at 360-361; *M.F. Roach Co.* v. *Provincetown,* 355 Mass. 731, 732 (1969). Here the judge found that Griffith and Goodchild had already decided to leave Ryan before Leggat offered them employment and that Leggat had neither recruited the men nor solicited their services.  Thus, his conclusion that Leggat had not induced or otherwise purposely caused the men to discontinue their employment with Ryan was proper.

The trial judge's findings and conclusions are supported by the evidence, are free from any errors of law, and are consistent with relevant legal standards. *New England Canteen Serv., Inc.,* 372 Mass. at 675. *Brink,* 372 Mass. at 263.  They also establish that Ryan failed to show it was entitled to relief because its evidence did not show that Leggat had intentionally interfered with Ryan's contractual rights by inducing or otherwise purposely causing Griffith and Goodchild to discontinue their relations with it.  Because of this failure, the trial judge correctly ordered the dismissal of the claim on its merits pursuant to rule 41(b)(2).

*Judgment affirmed.*