Sabra, J.
This is an appeal from a judgment for the plaintiff Adrianna Jackson, for a slip- and-M incident that took place at the defendants store in Brockton. Specifically, the issue presented is whether the plaintiff put forth sufficient evidence to warrant the trial judge’s finding that the foreign substance upon which the plaintiff slipped had been on the defendants floor long enough for the defendant in the exerdse of reasonable care, to have discovered it and removed it We hold that the record does not support the trial judge’s findings and we reverse the judgment
On July 19,1995, at around noontime, the plaintiff went to the defendants store located at 715 Crescent Street in Brockton to purchase some groceries. She was carrying a basket containing several items when she walked down aisle four in the store. The trial judge found that “she slipped and fell on a crushed cherry pit and skin which was on the floor of said premises, [that] [t]he cherry and pit was [sic] dry,” that “[t]he only credible evidence shows that the cherry was on the premises for a long period of time in a busy store in the middle of the day” (Underline included in original statement), and that “... the defendant knew or should have known of this dangerous condition and corrected the same and that its failure to do so was negligence.” He found for the plaintiff and assessed damages of $11,250.
The evidence, as recorded in a transcript of the trial, supportive of the plaintiffs case is this: As she walked, she stepped on “a cherry pit” She knew this because “it was stuck to the [flat leather] sole of my shoe.... I could feel the lump underneath my foot” She saw no juice on the floor, just the peel from the cherry. The floor looked dry, there was no stain on the floor, her clothing, or her body. The pit she removed from her shoe was not a whole cherry, “just part of a cherry. It wasn’t very big.” T know the pit of a cherry,” she said. She did not drop the cherry on the floor herself nor did she see it as she traversed the aisle. The produce section was approximately four aisles over from where the accident took place.
A “Sweep and Mop Log” admitted into evidence indicated four occasions when the defendants employees swept or mopped the store, or a portion of it “5:25 - 5.50; 5:50 - 6:00; 6:00 - 6:05; and 6:05 - 6:15.” The log contained no notation as to whether those times were “am.” or “p.m.” The store manager testified that the store was open from 6:00 am. to midnight and that it was customary to keep the log on a daily basis, that they swept between 6:00 am and 12:30 p.m, the time of the accident even though there was no log entry to that effect and that it was Shaw’s policy to have associates scheduled to do this, but that they might have “forgotten to write on the log.” He further indicated that the process of mopping and cleaning the floors is an ongoing procedure throughout the day, and that, although he did not see any foreign substance on the floor after he was notified of the accident, he would have expected his employees to clean up the area in the aftermath of such an accident and not wait until he had a chance to see the substance.
At the close of the plaintiffs case, and the close of all the evidence, the defendant *158 moved to dismiss the case pursuant to Mass. R. Civ. E, Rule 41(b) (2). The defendant presented no evidence. The trial judge denied both motions and rendered judgment in favor of the plaintiff. It is from these denials that the defendant appeals.
In entertaining motions filed under Rule 41(b), the judge necessarily makes a mixed decision of law and feet The ruling on such motions necessitates a determination of whether the plaintiff has proved enough to support a judgment in her fevor. The test is “whether in the evidence any combination of circumstances could be found from which a reasonable inference could be drawn in fevor of the plaintiff.” Anthony H. v. John G., 415 Mass. 196, 199 (1993), citing Miles v. Edward O. Tabor, M.D., Inc., 387 Mass. 783, 785-786 (1982) and case cited. The judge has one option to treat the plaintiffs evidence by taking as proved all uncontroverted evidence, resolving evidentiary conflicts in fevor of the plaintiff, and by drawing inferences in the plaintiffs fevor. The trial judge, however, “is not limited to that standard of proof required for a directed verdict” Ryan, Elliot & Co., Inc. v. Leggat, McCall & Werner, Inc., 8 Mass. App. Ct. 686, 689 (1979). The other option is for the trial judge, in a jury-waived case, “to weigh the evidence and resolve all questions of credibility, ambiguity and contradiction in reaching a decision.” Id. The findings of the trial judge will not be set aside unless “clearly erroneous.” Rafferty v. Sancta Maria Hospital, 5 Mass. App. Ct. 624, 630 n.7 (1977); SMITH & ZOBEL, RULES PRACTICE, §41.10, at 60 (1977). The basic issue in this and other similar cases, where there is no evidence that the defendant caused the substance to be on the floor, or actually knew that it was there, is whether the offending substance has been on the defendants floor long enough such that its employees should have known of its existence and cleaned it up. O’Leary v. Smith, 255 Mass. 121 (1926). It is not enough for the plaintiff to show that the defendants employees had no cleaning policy, or had one to which they did not adhere. As the O’Leary court said, at page 123,
It may be true that the defendant had had time the night before or that evening to clean up the vestibule, and in the process to remove the substance if it was then present in the vestibule. The difficulty witii that position is that there is no evidence that the substance was there to be removed if the vestibule had been cleaned at the time the defendant usually cleaned up; and there was no evidence that the substance had been on the floor a sufficient length of time for the defendant to discover it in the performance of his duty to see that the place was reasonably safe for his customers. (Italics added.)
The case at bar presents the same problem. The log may show lapses in the cleaning schedule or no cleaning at all at the time in question. But there is no evidence to show that the cherry pit was there long enough, that, if the defendant’s employees had cleaned on a regular basis, they would have encountered it The evidence was not, as the trial judge found, that the plaintiff slipped on a cherry pit and skin that were dry.[1] Rather, the testimony was that she slipped on a cherry pit, and the floor, her clothing and her body were dry. There was no evidence of whether the pit or the cherry skin were moist or dry. (Certainly the character of the skin, if it was seen in the area of the pit, could be relied upon for a determination of the length of time that the pit was on the floor. But the evidence affords no clues in this regard.) There is no evidence describing the character of the pit In fact, in order for the pit to stick to her shoe, it must have contained some moisture. Or else there was moisture surrounding it in order for it to adhere.
The size of the substance is also important A cherry pit, or even a portion of a *159 cherry, is ordinarily relatively small It is conceivable that the heat generated from the friction from the plaintiffs stépping and sliding on such a small item could cause it to dry or for what juice there was to be absorbed into the leather sole. Without more in the description of the cherry pit itself for instance that it was black, gritty, or looked walked on (see Anjou v. Boston Elevated Railway, 208 Mass. 273 (1911); Connair v. J.H. Beattie Company, 298 Mass. 550 (1937); and Scaccia v. Boston Elevated Railway, 317 Mass. 245 (1944)), we conclude that there is simply not enough information on which one can draw an inference to arrive at a finding that the pit was on the floor long enough for it to have been discovered by the defendant
Under these circumstances, the judge’s findings were not warranted by the evidence. There is not enough evidence to support a finding of negligence against the defendant Accordingly, we reverse the judgment and order that judgment enter for the defendant
So ordered.

 We assume that the trial judge inferred, from his finding that the cherry skin and pit were dry, that they had been out in the air and on the floor for a considerable length of time.