Swan, J.
The Law Office of Alfred Paul Farese, Jr. (“Farese”)[2] sued Richard (“Ricky”), Christa (“Christa”), and Grace (“Grace”) Floramo (collectively, “the Floramos”) for breach of contract for nonpayment of legal fees. At the conclusion of Farese’s case-in-chief, the trial court allowed the Floramos’ motion for a directed verdict and entered judgment for them. Farese has appealed the judgment as well as interlocutory rulings removing default judgments entered against the Floramos.
1. Relief from Default Judgment Ricky and Christa. Farese’s complaint was filed on September 11, 2007. According to the sheriff’s return on two summons, “last and usual” service was effected by a constable on Ricky and Christa the following day by mailing to, and taping to the garage door at, their home in Lynnfield. No answers being filed, default judgments were entered on October 12, 2007. Ricky and Christa moved for relief from the default judgments on June 12, 2008 pursuant to Mass. R. Civ. R, Rule 60(b) (1), supported by Ricky’s affidavit that, at the time of service, “construction workers were constantly going in and out of our garage (which is located towards the rear of our house) and working in and storing materials, equipment and the like in our garage,” that he and Christa “never saw the summons and complaint,” that he had defenses to the claim, and that Farese “overcharged me and made several misrepresentations to me as to the potential amount of the legal fees.” Farese filed no written opposition, but argued orally against it. The trial court allowed the motion and the filing of Ricky and Christa’s answer.
*241 A court “may relieve a party ... from a final judgment... for ... mistake, inadvertence, surprise, or excusable neglect.” Mass. R. Civ. R, Rule 60(b)(1). The motion must be made within a reasonable time, but not more than one year after judgment. Id “Decisive in the instant case is that, ultimately, resolution of motions for relief from judgment repose in the broad discretion of the motion judge. An appellate court will not reverse the motion judge’s decision ‘except upon a showing of a clear abuse of discretion.’” Tai v. City of Boston, 45 Mass. App. Ct. 220, 224 (1998), quoting Scannell v. Ed. Ferreirinha & Irmao, Lda., 401 Mass. 155, 158 (1987). “[J]udges in the motion and assignment sessions are in the best position to assess the merits of requests for this type of relief under the requirements of balancing efficient case flow with the litigants’ rights to a trial on the merits.” Berube v. McKesson Wine & Spirits Co., 7 Mass. App. Ct. 426, 434 (1979). Here, Ricky and Christa averred that they never knew of the action against them, the summons and complaint, which had been taped to the garage, having presumably been lost due to the building contractor’s actions,[3] and that, by way of their defense, the plaintiff had misrepresented the potential legal fees. Their counsel also noted that service was made by a constable, not a deputy sheriff as required by Mass. R. Civ. R, Rule 4(c), and that no request was made for a special process server. Farese did not show how he was prejudiced by the relief from judgment. And the motion was made within one year after judgment. See Berube, supra at 430-431. We find no abuse of discretion.
2. Rdidfrom Ddault Judgment Grace Grace was served in hand with a summons and complaint on the same day and by the same constable as Ricky and Christa were. No responsive pleading was filed, and a default judgment was entered on October 12,2007. Not until June 8,2009 did she file a motion for relief from the judgment, also citing Mass. R. Civ. P., Rule 60(b) (1). In her supporting affidavit, Grace stated that she “never received the original summons and complaint in a timely fashion,” even though she had been an active defendant in the case, answering interrogatories and document requests. She also stated that she had not received written notice of the entry of a default. At the contested oral argument on the motion, the Floramos’ attorney stated that he had been representing Grace as well as Ricky and Christa in the suit from the beginning. The court allowed the motion, and Grace’s answer was filed.
Grace’s written motion, like Ricky and Christa’s, was, as noted, brought under the same Rule 60 (b) (1), but was filed more than one year after judgment. Grace did not specifically request a remedy under Rule 60(6) (6), which allows for relief for “any other reason justifying relief from the operation of the judgment.” While Grace’s “motion did not invoke it, clause (6) of Mass. R. Civ. P., Rule 60(b) ... was an appropriate provision under which to consider vacating the judgment. The moving parly’s failure to so classify the motion is not dispositive.” Bowers v. Board of Appeals of Marshfield 16 Mass. App. Ct. 29, 33 (1983). Moreover, at oral argument on the motion, her counsel did indicate that relief was in fact being sought under Rule 60(b)(6).
*242 While the motion judge, given the officer’s return of in-hand service,[4] could have looked askance at Grace’s averment that she “never received the original summons and complaint in a timely fashion,” the judge was free to credit her statement that she had not received notice of default. Lack of notice of a default judgment constitutes valid grounds for Rule 60(b) (6) relief. Chavoor v. Lewis 383 Mass. 801, 806-807 (1981). Grace had also been an active participant in the defense of the lawsuit all along: even without a responsive pleading, she was in the case. It cannot be said that the judge abused his discretion in allowing the motion.
3. Dismissal of the Complaint According to the evidence at trial, in March of 2005, Richard Floramo, Sr. (“Richard, Sr.”)[5] met with Farese, an attorney, at the latter’s office in Everett. Farese had three interviews with Richard, Sr., during which Richard, Sr. explained that his wife Grace, his son Ricky, and his daughter-in-law Christa had been sued in the Peabody District Court by Michael Meadows (“Meadows”), a building contractor, had been defaulted, and were facing a hearing for an assessment of damages. As the Floramos already had an attorney, Farese was reluctant to get involved. By the third meeting with Richard, Sr., however, he agreed to represent the Floramos. Farese said he would first move to remove the default, a project that would take ten hours, for which he would charge $250.00 per hour (a reduction from his usual rate of $350.00, agreeing, in Farese’s words, that “I would reduce the fee to him as a courtesy to $250 an hour”), and that he would require a payment of $2,500.00 in advance. Richard, Sr. said that Ricky would deliver a check for that amount “and work out the logistics of the situation.” Ricky did deliver the check, but Farese was not in and did not meet with Ricky. The record is silent whether the check was that of Richard, Sr., or of Ricky, or of any of the other Floramos. Farese successfully removed the default and filed an answer on behalf of the Floramos. He discussed the rest of the work with Richard, Sr., telling him that he did not know whether the case would be tried or settled, and that he would continue to represent the Floramos at the reduced hourly rate of $250.00 and submit a bill at the end of the case. Richard, Sr. “was satisfied,” Farese testified, “and then we proceeded from there.” Farese prevailed after a three-day trial and so informed Richard, Sr. Farese also arranged for a lawyer to represent Ricky in another matter Ricky had pending in New Hampshire. Ricky stated that he would come to Farese’s office to pick up the file Farese had on the New Hampshire case and leave a check for $3,000.00 for the work on the Meadows case, but he never did so.
Farese had no written agreement regarding his representation of the Floramos. His demand for payment having gone unsatisfied, he commenced an action against the Floramos, alleging in his complaint a breach of contract, to wit, that he had been “hired by the [Floramos] to represent them as Defendants in the matter Meadows v. Floramo. etal... and the [Floramos] were advised as to [Farese’s] fee schedule,” that Farese successfully represented the Floramos, that he “billed the [Floramos] for services rendered,” and that “despite repeated requests the [Floramos] jointly and/or severally refused to pay and owe[d] the sum of $3,000.00 as balance on their *243 bill.” At the close of Farese’s case, the trial judge, sitting without a jury, allowed the Floramos’ motion for a directed verdict, with written findings. The judge concluded that although the complaint did not employ the phrase “breach of contract,” the theory of Farese’s action sounded in contract; that all the evidence indicated a contract between Farese and Richard, Sr., a nonparty; that although the contract for legal services benefitted the Floramos, they were not parties to it; that the court found no evidence that Richard, Sr. was acting as an agent for the Floramos; and that the complaint contained no count for quantum meruit.[6]
The vehicle that the Floramos employed to obtain the court’s ruling was a motion for a directed verdict pursuant to Mass. R. Civ. R, Rule 50. “A directed verdict motion is an anomaly in a nonjury trial. However, we discern no reason why such a motion, when made by a defendant at a bench trial, may not be treated as a motion for involuntary dismissal under rule 41(b)(2).” Skowronski v. Sachs, 62 Mass. App. Ct. 630, 632-633 (2004). Rule 41(6) (2) states, “After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.”
“We note first that in passing upon a motion under the second sentence of rule 41(6) (2) a trial judge is not limited to that standard of proof required for a directed verdict; rather, the judge is free to weigh the evidence and resolve all questions of credibility, ambiguity, and contradiction in reaching a decision” (citation omitted). Ryan, Elliott & Co. v. Leggat, McCall & Werner, Inc., 8 Mass. App. Ct. 686, 689 (1979). The court below found that the complaint before it sounded in contract. The complaint alleged that the Floramos “hired” Farese to represent them. But all the evidence in the case showed that Farese’s agreement for legal services was with Richard, Sr., not with the Floramos. Every meeting about which Farese testified was with Richard, Sr. Farese reduced his hourly rate from $350.00 to $250.00 as a courtesy “to him,” namely, Richard, Sr., not to the Floramos. While Ricky may have delivered a retainer check, it was not shown by whom the check was written. When the default was removed, it was with Richard, Sr., not the Floramos, with whom Farese met regarding subsequent fees. It was Richard, Sr., not the Floramos, who “was satisfied and then,” in Farese’s words, “we proceeded from there.” At no time did Richard, Sr. indicate to Farese that he was acting as an agent for the Floramos, or that the Floramos would be responsible for payment. While the complaint, as noted, alleged that it was the Floramos who hired Farese, the evidence showed otherwise.
Farese argued to the court below that if he could not recover in contract, he could recover under a theory of unjust enrichment, also known as quasi-contract or quantum meruit.
A quasi contract or a contract implied in law is an obligation created by law ‘for reasons of justice, without any expression of assent and sometimes *244 even against a clear expression of dissent.... [Considerations of equity and morality play a large part... in constructing a quasi-contract.’ 1 A. CORBIN, CONTRACTS §19 (1963). It ‘is not really a contract, but a legal obligation closely akin to a duty to make restitution.’ ‘A person who has been unjustly enriched at the expense of another is required to make restitution to the other.’ The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one parly and unjust detriment to the other party (citations omitted).
Salamon v. Terra, 394 Mass. 857, 859 (1985). The first problem for Farese is that the complaint did not allege unjust enrichment The second problem is that even if viewed as containing a claim for unjust enrichment, the person who benefitted from the services was Richard, Sr. It was he who approached Farese and, after several meetings, persuaded Farese to represent his relatives, because it was he who wanted the Floramos to receive the legal services. While pleadings “shall be so construed as to do substantial justice,” Mass. R. Civ. P., Rule 8(f), the “plaintiff [] did not plead unjust enrichment in [his] complaint, nor did [he] present evidence that the defendants unjustly benefited by” his services. Global Investors Agent Corp. v. National Fire Ins. Co. of Hartford, 76 Mass. App. Ct. 812, 826 (2010).
In the end, whether rights arose from contract or quasi-contract, Farese sued the wrong party, and the court below correctly dismissed the complaint.
Judgment of dismissal affirmed.
So ordered.

 Farese refers to both the law office entity and the individual attorney, where the context so admits.

 They did not address in their affidavit whether they had received the mailed copies.

 Service on Grace was also by a constable for whom no special appointment was sought under Mass. R. Civ. P., Rule 4(c).

 Richard, Sr. died three and one-half weeks before the trial.

 The judge also wrote that he would make further findings and rulings upon request, but no request was made.